(Darke Co., O., Court of Common Pleas.)

JEMIMA BROWN v. LEWIS H. KERNS ET AL.

---

(1). In an action for dower: Held, Where a wife abandons her husband and lives in the state of adultery with another, she is barred, by virtue of section 4192, of the Revised Statutes, of dower in the real estate of which her husband was seized during the marriage, unless the offence was condoned by the husband.

(2). Held further: That the doctrine of equitable estoppel is enforceable against a widow and in favor of the grantees of a deceased husband, in an action for dower in lands conveyed by the husband without her release: where, prior to the conveyances, the wife abandoned her husband, who was in the army, married and lived with another as his wife during the lifetime of her former husband, and as such wife of another, on her former husband's return, stood by and permitted him, with knowledge and without objection, to marry another; to acquire the lands in question and make conveyances there for, in which his then wife released dower, and which were received by the grantees in good faith and without knowledge. This although the first wife married again under the belief that her husband had obtained a divorce, which was in fact untrue and neither were divorced, a fact which she did not know until after his death.

---

On demurrer to the second and third defenses of the answer.

FISHER, J.

This is an action for the assignment of dower in four several tracts of land.

The plaintiff avers that she is the widow of Alexander Brown, who died in 1894, and that during their coverture, the said Brown was seized of said several tracts of land; that the said defendant, Lewis H. Kerns, claims to own and hold tract No. 4; the defendant, John Dresher, claims to own and hold tract No 1; the defendant, James H. Hartsell, claims to own and hold tract No. 2; and the defendants, David C. and David R. Roades, claim to own and hold tract No. 3.

The defendants filed a joint answer consisting of three defenses. The first defense admits that Alexander Brown is dead; that the plaintiff was married to the said Brown, as averred in the petition; and the defendants own the several tracts of land described in the petition, and that the heirs of the body of the said Alexander Brown, deceased, have no interest or estate therein, and then denies each and every other allegation in the petition contained.

The second defense alleges that Alexander Brown, deceased, owned and was seized in fee simple of the fourth tract, from April 6th, 1872, to November 15th, 1872; that he owned and was seized in fee simple of the second tract from January 24th, 1876, to May 27th, 1880; that he owned and was seized in fee simple of the first tract from March 14th, 1881, to January 14th, 1884; that each of the several tracts was encumbered by a mortgage for the purchase money, that Alexander Brown never paid on either of said tracts to exceed the sum of $1500; that he never owned a greater estate in either of the said tracts than said sum of $1500; and that on sale or exchange of one tract for another, he used and applied the proceeds in the purchase of said succeeding tracts so held and owned by him, as alleged; that by reason, thereof, the plaintiff is entitled to dower in but one of said tracts, and only to the extent of the purchase money paid thereon.

The third defense alleges that while Alexander Brown was serving as a soldier in the army, the plaintiff willfully abandoned him and went to live and cohabit with one Adolphus Lavingthal as his wife, and took his name and bore him a child, and continued to so live and cohabit with him as his wife continually, until his death which occurred some ten years ago. That, with the exception of a short time, said plaintiff and Lavingthal lived together as man and wife, in the neighborhood of the lands in the petition described; at and during the time, they were so held and owned by Alexander Brown; and at, or about the times these defendants or their immediate grantees, from said Brown, became the purchasers. That when said Brown was discharged from the army, he returned to his home; and about that time married another woman, and this second wife dying, some time thereafter, he again remarried, which third wife survived him as his widow; that during the time that he lived with his second and third wives and to the date of his death which occurred in 1894, they lived in the neighborhood where the plaintiff and said Lavingthal were living together as husband and wife; these defendants purchased said lands for value, and without any knowledge whatever of the claim of the plaintiff that she was entitled to dower therein; that the conveyances of said lands were made by the said Brown, his said second and third wives joining with him and releasing dower therein.

That from the time the plaintiff abandoned said Brown and went to living with Lavingthal as his wife, she never claimed to be the wife of said Brown; and with the knowledge of all the facts, stood by and saw and permitted the said Brown, without objection, to hold out to the world the women of his second and third marriages, to be his lawful wives and without making her claim known; saw and permitted these defendants and those under whom they claim, to deal with the said Brown and purchase said lands from him upon the reliance that the women of his second and third marriages were his lawful wives; and the only ones entitled to dower in the land. That said Brown never at

any time condoned the abandonment or conduct of the plaintiff.

To the second and third defenses the plaintiff demurred, and assigned as grounds, that neither of the defenses state facts sufficient to constitute a good defense to the petition.

(1). I am inclined to think that the demurrer is well taken to the second defense. Section 4188, of the Revised Statutes, provides, that a widow who has not relinquished or been barred of the same, shall be endowed of an estate for life, in one-third of all the real property, of which the deceased husband was seized as an estate of inheritance at any time during the marriage.

From these statutes it would appear that if the plaintiff is entitled to dower at all, she would be entitled to dower in each tract of which her husband was seized during the marriage, and the fact that each tract was encumbered by a mortgage for part of the unpaid purchase money, would not affect her dower right in the specific tract, and permit her husband, without her consent or signature to dispose of the tract of land and transfer her dower interest to the surplus fund after the payment of the purchase money mortgage, and then carry her dower right in the fund into another tract of land.

Such a doctrine would result in a mathematical puzzle out of which a Munchausen would be unable to extricate himself.

To what extent she should be endowed in each tract is not so clear, but the court is of the opinion that under the holdings of our supreme court, she would be entitled to dower in each entire tract

The demurrer therefore, to this second defense, will be sustained.

(2). The third defense includes two separate defenses. That of estoppel by conduct of the plaintiff, and of forfeiture by reason of abandonment of her husband and the living in a state of adultery with Lavingthal.

As between the heirs of the deceased husband and the widow, the widow would not be estopped from claiming dower, by conduct in the lifetime of the husband, amounting to a denial that she was his wife, in lands of which he died seized; but the court is of the opinion, that a different rule obtains between the grantees of the husband and the person who claims to be his widow, in relation to lands which were conveyed by the husband in his life-time.

I know of no rule of law which exempts married women from the doctrine of equitable estoppel. Coverture will not excuse fraud, nor will it shield a married woman from the binding force of her conduct where she seeks to enforce a right inconsistent with that conduct upon which others have relied and acted.

Mr. Pomeroy in his work on Equity Jurisprudence, section 814, after calling attention to the conflicting authorities observes: "The tendency of modern authorities however, is strongly towards the enforcement of estoppel as against married women as against persons sui juris, with little or no limitation on account of their disability; this is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial, or complete capacity to deal with it as though they were single. Even independently of this legislation, there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right or maintain a defense". And he adds further, "There are, however, decisions which hold, in effect, that since a married woman can not be directly bound by her contracts or conveyances, even when accompanied with fraud, so she cannot be indirectly bound through means of an estoppel; and the operation of the estoppel against her must be confined to cases where she is attempting affirmatively to enforce a right inconsistent with her previous conduct, upon which the other party has relied. These decisions seem to be in opposition to the general current of authorities."

Wilder v. Wilder, 9th L. R. A., 97; Arthur v. Israel, 10th L. R. A., 693; Speier v. Opfer, 2nd L. R. A., 345; Towels v. Fisher, 7th N. C., 443.

While the exact point has never been decided in Ohio, the principle of the doctrine has been held in cases involving questions somewhat similar to the one at bar.

By the act of April 3rd, 1861, and acts amendatory thereto, a married woman was relieved of many of the disabilities fixed upon her by the married relation. In regard to her separate property, she stands now, and for most of the time did, during the period of time involved in this case, in relation to her rights, as a feme sole; the statutes have relieved her from her marriage disabilities, and enabled her to enter into contracts as though single. The reason of the rule, which denied the application of equitable estoppel, having been removed, the rule itself ceases.

Herman in his work on Estoppel, section 1105, says: "Under the various statutes removing the common law disabilities from married women, corresponding liabilities have necessarily been imposed upon them. They take the civil rights and privileges conferred, subject to all incidental and correlative burdens and obligations; and their rights and obligations are to be determined by the same rules of law and evidence by which the rights and obligations of the other sex are determined under like circumstances.

These disabilities are for the most part intended for the protection and benefit of the wife from the dominion of the husband. The dominion of the husband being removed, the reason for the protection is removed. So it was held in the case of Smiley v. Wright, 2nd Ohio, 506, that where the widow, entitled to dower, being present at the sale, under order of the court, asserts that the sale may be made free from dower, in consequence of which the price is increased, is thereby barred of dower, although the purchaser was not ignorant of her title.

The same doctrine is held in the case of Rosenthal v. Mayhugh, 33d Ohio St., 155. In that case the husband of the defendant, Clarissa Mayhugh, abandoned her and went to parts unknown, and was absent for a period of more than eight years; during his absence his wife, believing that he was dead, joined with her children in conveying the real estate of which her husband was seized; her husband afterwards turned up, but did not live with her, and in a short time died. After his death, his widow sought to have her dower assigned in the real estate, claiming that she was a feme covert at the time the conveyance was made, that her act and deed were void; and the court held that although the husband was living and although such conveyance did not operate as a release of her inchoate right of dower; yet she is barred by way of equitable estoppel from treating her contract as a nullity, and from asserting her right to have dower assigned, upon the death of her husband.

Herman on Estoppel, sec. 1108.

The case of Edgar v. Richardson, 33rd Ohio St., 581, is another leading case in Ohio; and is referred to by Herman under section 781, as a case involving an estoppel in pais. In this case the wife deserted the husband, and having failed to obtain a divorce, went to parts unknown and remained away about three years. On her return she declared that during her absence she had obtained a divorce. In a few years afterwards, her husband deciding to re-marry, sent an agent to inquire of her in reference to her having obtained a divorce. In replying to the inquiries she stated that she had obtained a divorce, and that she hoped her former husband would marry again. This information was communicated to the parties interested, and they were married. About the same time, the first wife also married again and lived with her second husband. A few years later, the first husband died, childless and intestate, and thereupon his first wife, claiming to be his heir, conveyed a tract of land, of which he died seized, to the plaintiff, who brought this action against the second wife to dispossess her of the land; the court held that the admissions of the first wife, that she had obtained a divorce, though relating to a matter of record, were, as against

the party claiming under her, admissible in evidence and warranted the court in holding that the plaintiff was estopped from denying that she was divorced.

The acts of estoppel done by the wife in the lifetime of the husband are held to operate upon her after his death.

The court views the controversy as one relating solely to property rights, unaffected by those legal considerations which give to marriage its peculiar status.

In Ohio, inchoate dower is held to be a present valuable interest in the estate, something more than a naked possibility; it is a present vested right of value, susceptible of being estimated contingent on survivorship. The answer avers that when her husband obtained this real estate, she was not living with him, but was living with another person, declaring by her acts and words that she was not the wife of Brown, but was the wife of the man with whom she was living. She had abandoned for years the performance of every marital obligation and duty. She had led the women, who afterwards became the wives of her husband, to believe that she was not the wife of Brown; and to believe that they were lawfully married to Brown; she permitted those dealing with her husband in relation to maters in which she had a vested interest to believe that she was not his wife, and that she was in no way interested in the subject matter. And the court is of the opinion that it would be a fearful violation of conscience and all equitable rules to permit the plaintiff on the death of her husband to boldly seize all the pecuniary advantages conferred by law upon a faithful wife and bereaved widow.

This argument in relation to estoppel is based upon the assumption that Mrs. Brown was married to Lavingthal under the impression that she was divorced from her husband.

The court is further of the opinion that the defense of forfeiture by reason of cohabitation and adultery is equally good. I need not go into an extended discussion of this defense.

It is sufficient to say that at common law dower was not forfeited by adultery. The forfeiture was introduced by the act of 13 Edward 1, chapter 34, commonly known as the statute of Westminister 2nd. Seagrave v. Seagrave, 13 Vesey, Jr., 442 Co. Litt., 32 B.

This statute is the basis of section 4192 of our Revised Statutes, which provides that a husband or wife who leaves the other and dwells in adultery, shall be barred of the right of dower in the real property of the other, unless the offence is condoned by the injured consort, and was incorporated in our law in 1804.

The averment of the answer is that the plaintiff abandoned her husband and lived in a state of adultery until his death and that the offence was never condoned by the husband. I do not think that the fact, if it be a fact, that her husband, Brown, was living in a state of adultery also, would in any way affect the force of the statute, or amount to a condonment of the offence on the part of Brown, within the meaning of the law; nor am I of the opinion that the fact that she believed in good faith that her husband had procured a divorce from her before she took up with the adulterer, would in any way effect her rights, if she abandoned her husband and lived in a state of adultery. Second Bacons' Abridgement, 384.

The court has been unable to find but few American authorities which discuss this statute, and has relied largely upon the interpretation given it by the English courts.

In the case of Coot v. Berty, 12 Mod., 23, on the plea of elopement of the wife and the reply of the wife that the husband bargained and sold her to the adulterer, the court held the reply bad; for the reason that the license of the husband to live in adultery, could not be plead in bar by the widow, where she seeks to recover dower.

In the case of Hethrington v. Graham, 6 Bingham, 134, it is held that adultery is a bar to dower, although committed after the husband and wife have separated by mutual consent. In

Scribner on dower, 532, and notes; the same doctrine is announced as the law of this country; nor is a divorce necessary in order to bring into operation, the statute. In the case cf Goss v. Froman, 8th L. R. A., 102; S. C. 11 Ky. L. Rep., 631, under a statute similar to our own, the court held in an action by the widow for dower that she had forfeited her right to dower by reason of her adultery and abandonment of her husband. To the same effect is the case of Bell v. Neely, 1 Bail. L., 312, S. C., 119 Am. Dec., 686; Woodward v. Dowse, 10 C. B. N. S., 722.

The court is therefor, of the opinion under the facts alleged in this defense, the plaintiff forfeited her right to dower by virtue of section 4192, of the Revised Statutes, and the demurrer must be overruled.

Meeker & Gaskell, for Plaintiff.

Anderson & Bowman, for Defendants.